IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKAN BOYD, | No. C-10-CV-3591-EDL |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |
| v. | |
| FIRE BUREAU, CITY OF OAKLAND, et al. | |
| Defendants. | |

Defendants Oakland Fire Bureau, City of Oakland, and individuals Laffon and Glover (sued in their official capacities) move to dismiss pro se Plaintiff Akan Boyd's "Petition for Exemplary Relief for Deprivation of Civil Rights" (hereinafter referred to as the "Complaint") on various grounds. A hearing on the motion was held on December 17, 2010 with counsel for Defendants appearing and Plaintiff appearing pro se, during which the Court entertained extensive oral argument. Having carefully considered the parties' written submissions and presentations during oral argument, as well as the entire record in this case, the Court hereby GRANTS Defendants' motion to dismiss without leave to amend.

I. **Background**

Plaintiff's complaint against the City of Oakland, the Oakland Fire Department, and two of its members concerns an invoice for $142.38 that he received following a 2009 inspection of a fire extinguisher located in a space rented by Plaintiff. The space was apparently intended to house a non-profit organization run by Plaintiff, but due to lack of funding for the non-profit, the space was being used for storage. Compl. at 2. Plaintiff voluntarily let defendant Laffon (an inspector with the

fire department) into the space for the inspection, but was unaware that there would be a fee associated with the inspection. Id. at 2-3. Plaintiff did not pay the inspection fee, which resulted in a subsequent warning letter. Id. at Exs. A, B. Plaintiff claims that he was treated differently from other tenants in the area without explanation, the fire department's actions "seem" discriminatory, the inspection fee was not charged in previous years, he was not provided with notice of the fee for the inspection, and the invoice and subsequent warning letter were threatening to Plaintiff. Id. at 2, 4. Based on these facts, Plaintiff brings what appear to be claims under the Administrative Procedure Act, the Ninth Amendment, the Fourteenth Amendment, 42 U.S.C. § 1983, and the Eighth Amendment. Id. at 1, 3.

## II.  Legal Standard

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted), 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

2

## III. Analysis

### A. Administrative Procedures Act Claim

Defendants move to dismiss Plaintiff's claim for violation of the Administrative Procedures Act ("APA") on grounds that the complaint does not allege any action by a federal actor. See Gilliam v. Miller, 973 F.2d 760, 762 (9th Cir. 1992) (affirming dismissal of complaint brought under APA for failure to allege "that a *federal* actor took action 'without observance of procedure required by law'") (emphasis in original). The defendants named by Plaintiff in this action are the "Fire Bureau, City of Oakland" and Lt. Laffon and Inspector Glover, agents for the City of Oakland acting in their official capacity. In his opposition and during oral argument, Plaintiff argued that the City of Oakland is a federal actor because, among other things, it is designated as a Foreign Trade Zone, receives "federal block grants" from the federal government, and is subject to review by unspecified agencies of the federal government. See Opp. at 1. However, Plaintiff has not provided any support for his legal conclusion that the City of Oakland is a federal actor, and there are no factual allegations supporting this conclusion contained in the complaint.

Further, even if Plaintiff's complaint was amended to include additional allegations regarding Oakland's status as a Foreign Trade Zone, recipient of "federal block grants," or subject to review by other agencies of the federal government, the Court has not located any law indicating that this type of tangential involvement with the federal government makes a city or its agents federal actors under the federal APA. On the contrary, state actors have been held *not* to be federal actors under more closely related circumstances. See e.g., Day v. Shalala, 23 F.3d 1052, 1063-64 (6th Cir. 1994) (reversing as error district court determination that state agency implementing federal social security act guidelines was a federal actor subject to the APA). Because Plaintiff has not and cannot show that the City of Oakland was acting as a federal actor, all claims based on the APA are dismissed with prejudice.

### B. 42 U.S.C. § 1983 Claim

Defendants move to dismiss Plaintiff's § 1983 claim on grounds that the complaint does not allege any injury caused by an official policy, as required by Monell. A claim under § 1983 is generally pled as follows:

3

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir.1992) (citations and internal quotations omitted), cert. denied, 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993).
>
> After proving that one of the three circumstances existed, a plaintiff must also show that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation. Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir.1981); see also City of Springfield v. Kibbe, 480 U.S. 257, 266-68, 107 S.Ct. 1114, 1119-20, 94 L.Ed.2d 293 (1987) (discussing causation requirement in section 1983 municipal liability cases).

Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  Plaintiff's complaint does not adequately plead any of these theories, and he was unable to articulate a cognizable theory during oral argument.  His complaint describes a single incident of an inspection and subsequent billing, and does not identify any official policy or custom of unconstitutional conduct, or ratification of unconstitutional conduct.  When questioned about this pleading failure, Plaintiff could not identify any unconstitutional policy but argued that the policy of charging an inspection fee was unconstitutional as applied to him because it caused him unspecified "economic hardship."  As discussed further below, there is no constitutional right to be free from economic hardship, so leave to amend to assert this theory would be futile.  Plaintiff's civil rights claims thus fail as a matter of law and are dismissed with prejudice.

**C.   Ninth Amendment Claim**

Defendants move to dismiss Plaintiff's Ninth Amendment claim as a matter of law because the Ninth Amendment does not "independently secur[e] any constitutional right, for purposes of pursuing a civil rights claim."  See Standberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986). Plaintiff contends that the Ninth Amendment is a viable basis for his claims, but he has provided no legal authority for this position in his papers or during oral argument.  Apparently, he believes that his Ninth Amendment rights have been violated because his mental and physical well-being have been affected by Oakland's collection policy because he is living in economic hardship.  However, even if there were a constitutional right to be free of economic hardship stemming from a

4

governmental collection (which there is not), the Ninth Circuit is an inappropriate vehicle for bringing this claim. Thus, Plaintiff's Ninth Amendment claim is dismissed with prejudice under Standberg.

### D.     Fourteenth Amendment Claim

Defendants argue that Plaintiff's Fourteenth Amendment claim should be dismissed for failure to properly allege any violation of his due process or equal protection rights.[1]

In general, parties claiming that their procedural due process rights were violated must establish "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002) (quoting Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)) (internal quotation marks omitted). A portion of Plaintiff's Fourteenth Amendment claim appears to be based on allegations that he was not provided with notice that he would be charged a fee for the inspection, and that his property was improperly classified as a business instead of a storage facility. He further alleges that he made two phone calls and sent a letter to the fire department regarding the invoice, but these communications were largely ignored. Compl. at 4. However, Plaintiff does not explain what liberty or property interest he was deprived of, or that he was denied any procedural protections. Instead, Plaintiff apparently did attempt to challenge the propriety of the invoice, but this challenge was denied. See Opp. Ex. 1 (4/5/10 letter from Plaintiff to City challenging the invoice). Further, public documents that are properly the subject of judicial notice show that the Master Free Schedule for Fire Services for the City of Oakland disclosed that the fee for inspection of "all other occupancies (+< 3 stories, excluding care facilities, single family dwellings, duplexes)" was $149.38.[2] See Def.'s Request for Judicial Notice

---

[1] In the Joint Case Management Statement and his Opposition, Plaintiff contends that he was not trying to plead a procedural or substantive due process claim, but is simply seeking due process from this Court in administering his right to relief. CMC Statement at 3; Opp. at 2. He made no argument relating to due process during oral argument. Thus, the Court construes Plaintiff's Fourteenth Amendment claim as an equal protection claim only, but for the sake of completeness and to show that amendment to assert a due process claim would be futile, the Court addresses Defendants' arguments that the complaint also fails to state a due process claim.

[2] It is unclear why Plaintiff's invoice was for $142.38, though this makes no difference to the Court's analysis.

5

Ex. A (Oakland City Council Ordinance No. 12948 CMS), Ex. B (City of Oakland Master Fee Schedule). Thus, Plaintiff did have notice of the inspection fee, and his use of the space for storage instead of offices is irrelevant under the fee schedule as the schedule does not distinguish based on the manner in which premises are being used. For the foregoing reasons, and because Plaintiff expressly disclaims any procedural due process claim, his Fourteenth Amendment claim cannot be based on this theory.

With respect to substantive due process, Defendants persuasively argue that Plaintiff's complaint does not allege the violation of any "substantive libert[y] deeply rooted in this Nation's history and tradition." See Moore v. City of East Cleveland, 431 U.S. 494, 502 (1977). While not entirely clear, it appears that Plaintiff is claiming that his "right to life and liberty and property" or "retained natural laws" were violated by the Defendants' actions because the actions impacted his "economic survival," but he does not explain how this is the case. Compl. at 4; Opp. at 3. Plaintiff's theory appears to be that receipt of the unexpected invoice caused him significant anxiety relating to economic hardship, but as Defendants correctly note, there is no constitutional right to be free of economic anxiety. See Harris v. McRae, 448 U.S. 297, 316-18 (1980). Alternatively, Defendants guess that Plaintiff's theory might be that the invoice and subsequent warning letter somehow interfered with Plaintiff's ability to work, because there are some allegations indicating that Plaintiff feared that the license for his non-profit company would be revoked based on the unpaid bill. Regardless of which theory Plaintiff is advancing, there is no constitutional right to be free of worry that an unpaid bill might cause damage to an existing business or other unspecified economic hardship. The government can impose reasonable regulations, such as billing for fire inspections, without unconstitutionally interfering with the right to pursue a profession. See Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 997-998 (9th Cir. 2007) (substantive due process claims relating to occupational liberty limited to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure'"). Thus, Plaintiff's Fourteenth Amendment claim also cannot be based on a substantive due process theory.

6

Plaintiff's equal protection allegations in the complaint are slightly more on point but still fall short, and his unequivocal statements during oral argument establish that he cannot state a viable equal protection claim. His complaint states that he was "discriminately [sic] singled out for paying an inappropriate fee" because "no other building tenant or adjacent building tenants were charged for inspection fees" and "no reasonable distinction can be found between those favored for not paying for unwarranted and faulty inspection and those as Plaintiff discriminated against to pay for unwarranted and faulty inspection." Compl. at 6. The complaint also states that the investigator entered the space and observed "an office environment with orderly decor in an African tradition" and Plaintiff wonders if: "Because of the imminent African national origin in evidence in the site was there a probable cause of race discrimination?" Id.

Even taking all of the allegations of the complaint as true, these allegations do not show that the other tenants or neighbors who were allegedly not billed were similarly situated to Plaintiff, and do not support any inference that he was treated differently because of his membership in any particular class. Plaintiff's bare-bones speculation that race might have played into the decision to invoice him for the inspection is phrased as a question rather than as a statement, and the complaint is devoid of any facts supporting this speculative legal conclusion. See Compl. at 6.

At oral argument, when directly questioned about the lack of factual allegations to nudge his claim across the border from conceivable to plausible as required by Twombly, Plaintiff stated that he is a member of the protected class of a "continuation of enslavement" and that there "might [have been] some racial content" to the decision to send him an invoice, but admitted that he has "no facts" supporting his assumption that race influenced any Defendants' conduct and it would be very difficult to obtain any such facts. Plaintiff's in-court admission that he has no facts supporting an allegation of race discrimination make leave to amend his equal protection claim futile. Thus, Plaintiff's Fourteenth Amendment claim is also dismissed with prejudice.

### E.     Eighth Amendment Claim

Plaintiff's complaint very briefly mentions the Eighth Amendment, apparently arguing that the fee for the fire inspection is an "excessive fine." Compl. at 7. However, the excessive fines clause of the Eighth Amendment only applies to punitive, as opposed to remedial, fines. See U.S. v.

7

Mackby, 261 F.3d 821, 829-830 (9th Cir. 2001). "In determining whether a civil sanction is punitive or remedial, 'the court considers factors such as the language of the statute creating the sanction, the sanction's purpose(s), the circumstances in which the sanction can be imposed, and the historical understanding of the sanction.'" Id. at 830. Here, the fire inspection fee was not a "sanction," and there is nothing in the complaint indicting that it was punitive in nature. Indeed, in enacting the fee schedule, the Oakland City Council expressly stated that the fees were "necessary to reimburse the City for the costs of performing the various municipal and regulatory functions." See Def.'s RJN Ex. A. In hid opposition, Plaintiff argues that the inspection fee and subsequent demand letters were "punitive" because he does not have the money to pay the fee. However, ability to pay is not a factor in determining whether a routine inspection fee is punitive or remedial, or whether it is excessive. In light of the Defendants' judicially noticed evidence and Plaintiff's inability to allege or show that the fee was punitive or excessive, the Court finds that the fee was remedial as a matter of law and dismiss the Eighth Amendment claim with prejudice.

**IT IS SO ORDERED.**

Dated: December 20, 2010

ELIZABETH D. LAPORTE
United States Magistrate Judge